**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

NO. 18-1302

---

YURY RINSKY,

Plaintiff - Appellee

v.

CUSHMAN & WAKEFIELD, INC.,

Defendant - Appellant

---

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

---

# REPLY BRIEF OF APPELLANT CUSHMAN & WAKEFIELD, INC.

---

Ralph T. Lepore, III, No. 27409
Benjamin M. McGovern, No. 123536
HOLLAND & KNIGHT LLP
10 Saint James Avenue
Boston, MA 02116
(617) 523-2700

Sawnie A. McEntire, No. 1184309
Paula D. Taylor, No. 1184433
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Avenue, Suite 4400
Dallas, TX 75201
(214) 237-4300

Dated: September 20, 2018
Boston, Massachusetts

## TABLE OF CONTENTS

TABLE OF CONTENTS....................i

TABLE OF AUTHORITIES....................ii

INTRODUCTION....................1

I. THE DISTRICT COURT ERRED BY ENTERING JUDGMENT FOR RINSKY UNDER THE NYCHRL....................3

A. C&W Is Not Judicially Estopped From Raising The *Hoffman* Test....................3

B. Rinsky Did Not Feel The Impact Of His Termination In New York City....................9

II. THE DISTRICT COURT ERRED BY FAILING TO INSTRUCT THE JURY PROPERLY REGARDING THE SUBSTANCE OF NEW YORK LAW...14

A. The District Court Erred by Commingling and Confusing Causation Standards That Are Not "Equivalent"....................14

B. The District Court Erred by Failing To Instruct The Jury That An Award Of Punitive Damages Required Clear And Convincing Evidence....................17

III. THE DISTRICT COURT ERRED BY REJECTING C&W'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE....................19

A. C&W Was Not Planning To Replace Rinsky But Had No Choice But To React To His Efforts To Force A Transfer....................20

B. C&W Had No Plausible Motivation To Replace Rinsky With A Younger Employee And Did Not Do So....................22

CONCLUSION....................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Benham v. eCommission Solutions, LLC*,
118 A.D.3d 605 (N.Y. App. Div. 2014) ........................10

*Caci v. State*,
107 A.D.3d 1122-23 (N.Y. App. Div. 2013) .....................5

*Caffrey v. N. Arrow Abstract & Settlement Servs., Inc.*,
160 A.D.3d 121 (N.Y. App. Div. 2018) .........................5

*Chauca v. Abraham ("Chauca I")*,
841 F.3d 86 (2d Cir. 2016) ..................................15

*Chauca v. Abraham ("Chauca II")*,
89 N.E.3d 475 (N.Y. 2017) ...............................17, 18

*Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*,
830 F.3d 18 (1st Cir. 2016) ..................................7

*Douglas v. Banta Homes Corp.*,
No. 11 Civ. 7217(KBF), 2012 WL 4378109 (S.D.N.Y. Sept. 21, 2012) ......................................16

*Gaffney v. Dep't of Information Tech. and Telecommunications*,
536 F. Supp. 2d 445 (S.D.N.Y. 2008) ........................23

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) ..........................................4

*Hansen v. Harper Excavating, Inc.*,
641 F.3d 1216 (10th Cir. 2011) ...............................4

*Hardwick v. Auriemma*,
116 A.D. 3d 465 (N.Y. App. Div. 2014) ...................7, 10

*Hoffman v. Parade Publications*,
933 N.E.2d 744 (2010) ................................*passim*

*Kennedy v. Town of Billerica*,
617 F.3d 520 (1st Cir. 2010) ................................15

Case: 18-1302 Document: 43 Page: 4 Date Filed: 09/20/2018 Entry ID: 6199693

*Knowlton v. Shaw*,
704 F.3d 1 (1st Cir. 2013) ....................................6

*Lawless v. Steward Health Care Sys., LLC*,
894 F.3d 9 (1st Cir. 2018) ....................................4

*In re Matter of Jarrett*,
230 A.D.2d 513 (N.Y. App. Div. 1997) ..........................6

*Presser v. Key Food Stores Co-Op., Inc.*,
316 Fed. Appx. 9 (2d Cir. 2009) ..............................23

*Robles v. Cox and Co., Inc.*,
841 F. Supp. 2d 615 (E.D.N.Y. 2012)
.....................................................9, 10, 11

*Sanchez-Lopez v. Fuentes-Pujols*,
375 F.3d 121 (1st Cir. 2004) .................................15

*Sexual Minorities Uganda v. Lively*,
899 F.3d 24 (1st Cir. 2018) ............................4, 6, 9

*Strohmeyer v. Int'l Broth. of Painters and Allied Trades*,
989 F. Supp. 455 (W.D.N.Y. 1997) .............................24

*Tersigni v. Wyeth*,
817 F.3d 364 (1st Cir. 2016) ..................................1

*Velazco v. Columbus Citizens Found.*,
778 F.3d 409 (2d Cir. 2015) .............................15, 17

*Wexelberg v. Project Brokers, LLC*,
13 CIV. 7904 LAK MHD, 2014 WL 2624761 (S.D.N.Y. Apr. 28, 2014) ..........................................11, 12, 13

## INTRODUCTION

Pursuant to the *Erie* doctrine, this Court has the unflagging duty in a diversity matter to "apply state law as it exists" and not "as the plaintiff wishes it to be." *See Tersigni v. Wyeth*, 817 F.3d 364, 369 (1st Cir. 2016). Nothing in appellee's brief disturbs the conclusion that the District Court failed to apply New York law correctly to the facts of this case.

In the first instance, Rinsky[1] is incorrect to assert that judicial estoppel relieves him of the burden to prove that the "impact" of his termination was felt within New York City. Because impact is a requirement of subject-matter jurisdiction under New York law, it can never be waived or otherwise established through estoppel. Nor can Rinsky demonstrate any such impact where, as here, the evidence is undisputed that he was living and working in Massachusetts at the time of his termination. Accordingly, the judgment under the NYCHRL should be vacated.

Equally meritless is Rinsky's effort to defend the District Court's jury instructions. The District Court disregarded the mandate of New York courts to treat city and state-law claims

---

[1] Capitalized terms will be defined in this Reply Brief as those same terms are defined in the Opening Brief of Appellant Cushman & Wakefield, Inc.

separately when it commingled divergent causation standards for the NYSHRL and NYCHRL in its instructions. Similarly, the District Court committed further error by failing to apply the "clear and convincing" burden of proof to its instructions regarding the availability of punitive damages under the NYCHRL. The judgment resulting from these instructions was therefore fatally flawed and should be vacated.

Finally, Rinsky fails in his efforts to defend the sufficiency of the evidence supporting the District Court judgment. Contrary to Rinsky's assertions, C&W was not secretly planning to terminate him in favor of a younger employee. In fact, just the opposite was true. Rinsky was a valued employee to whom C&W had just granted a substantial raise and bonus. It was Rinsky, not C&W, who planned a clandestine move to Massachusetts and forced it upon his superiors who had no desire or motivation to replace him with a younger employee. In these circumstances, it was against the weight of the evidence for the District Court to award Rinsky either compensatory or punitive damages.

For the foregoing reasons, and as more particularly described below, this Court should vacate the District Court judgment and remand this matter, if necessary, for further proceedings.

Case: 18-1302 Document: 43 Page: 7 Date Filed: 09/20/2018 Entry ID: 6199693

## I. THE DISTRICT COURT ERRED BY ENTERING JUDGMENT FOR RINSKY UNDER THE NYCHRL

Rinsky concedes, as he must, that the judgment entered in his favor under the NYCHRL requires a finding of "impact" within the borders of New York City in order to satisfy the *Hoffman* impact test. In an effort to defend that judgment, Rinsky now contends that C&W is judicially estopped from relying on *Hoffman* in this appeal and that, in any event, the test is satisfied because he felt the impact of his termination within New York City. Both of these arguments lack merit.

### A. C&W Is Not Judicially Estopped From Raising The *Hoffman* Test

#### 1. Rinsky Cannot Create Subject-Matter Jurisdiction Through Estoppel

It is undisputed that New York courts characterize the *Hoffman* test as a threshold inquiry of subject-matter jurisdiction. *See, e.g., Hoffman v. Parade Publications,* 933 N.E.2d 744, 748 (2010) (holding that trial court "properly dismissed [plaintiff's] age discrimination claim for want of subject matter jurisdiction."); *see also* Opening Brief of Cushman & Wakefield, Inc. ("Opening Br.") at 30 n.9 (collecting cases). And it is equally well-established that judicial estoppel cannot operate to create subject-matter jurisdiction where it would otherwise not exist.

Indeed, the U.S. Supreme Court has held that:

> When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented ... Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety.

*Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). It is for this reason that Circuit Courts, including this Court, conclude routinely that although subject-matter jurisdiction may be **defeated** through estoppel, it can never be **created** through estoppel. *See Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 34 (1st Cir. 2018) ("Even though federal subject-matter jurisdiction cannot be established through waiver or estoppel, it may be defeated by waiver or estoppel."); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1228 (10th Cir. 2011) (refusing to "allow judicial estoppel to substitute for subject-matter jurisdiction."); *accord Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 16 (1st Cir. 2018) ("...federal subject-matter jurisdiction can never be presumed, nor can it be conferred by acquiescence or consent.").

Nor is a different result required by virtue of the fact that this is a diversity case arising under New York law. For the reasons described in Section I.B of C&W's Opening Brief, both the District Court and Rinsky are incorrect to limit their analysis of subject-matter jurisdiction to the issue of

diversity. This is because, by operation of the *Erie* doctrine, satisfaction of the *Hoffman* test functions in federal court as a prerequisite to recovery just as it would in a New York court. Moreover, as in federal court, under New York law "a defect in subject matter jurisdiction may be raised at any time, even for the first time on appeal, because it relates to the competence of the court to consider [the] matter ... and, therefore, such defect 'cannot be overlooked or remedied by either waiver or estoppel.'" *Caci v. State*, 107 A.D.3d 1122-23 (N.Y. App. Div. 2013) (internal citations omitted); *see also Caffrey v. N. Arrow Abstract & Settlement Servs., Inc.*, 160 A.D.3d 121, 133 (N.Y. App. Div. 2018) ("Subject matter jurisdiction is a concept that is absolute — it either exists in its entirety or it does not exist at all. A defect in subject matter jurisdiction may be raised at any time by any party or by the court itself, and subject matter jurisdiction cannot be created through waiver, estoppel, laches, or consent.").

Accordingly, Rinsky is required as the proponent of subject-matter jurisdiction to establish that such jurisdiction is proper under the NYCHRL. Even if C&W took inconsistent positions in the District Court - which it does not concede for the reasons described in Section I.A.2, *infra* - judicial estoppel cannot operate here as a substitute for Rinsky's independent and non-waivable obligation to establish that the

*Hoffman* test is satisfied. *See Lively*, 899 F.3d at 34 ("...the doctrine of judicial estoppel cannot be applied to create federal subject-matter jurisdiction that is otherwise lacking."); *In re Matter of Jarrett*, 230 A.D.2d 513, 516 (N.Y. App. Div. 1997) ("An objection to subject matter jurisdiction is neither waivable nor curable by consent, estoppel or laches, and it may be raised at any time....").

2. Rinsky Fails To Establish The Elements Of Judicial Estoppel

A proponent of judicial estoppel must establish: (1) that a party's "earlier and later positions" are "clearly inconsistent"; and (2) the party "succeeded" in "persuading a court to accept" the earlier position. *See Knowlton v. Shaw*, 704 F.3d 1, 10 (1st Cir. 2013). Even assuming, *arguendo*, that principles of judicial estoppel could override this Court's independent obligation to apply the *Hoffman* test, which C&W does not concede for the reasons set forth in Section I.A.1, *supra*, judicial estoppel does not apply here in any event because Rinsky fails to establish either of its requisite elements.

In the first instance, there is no inconsistency between C&W's initial argument that choice of law principles favored application of New York law and its subsequent argument that the jury's verdict ultimately deprived the District Court of jurisdiction to enter judgment under the NYCHRL. This is because

Case: 18-1302 Document: 43 Page: 11 Date Filed: 09/20/2018 Entry ID: 6199693

the generic choice of law analysis required the District Court to consider and balance several factors, including: "'the place where the injury occurred,' 'the place where the conduct causing the injury occurred,' 'the domicile, residence, nationality, place of incorporation and place of business of the parties,' and 'the place where the relationship, if any, between the parties is centered.'" *Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 34 (1st Cir. 2016). On the other hand, the *Hoffman* test asks **only** "where the impact of the alleged discriminatory conduct is felt" in order to assess jurisdiction. *Hardwick v. Auriemma*, 116 A.D. 3d 465, 467 (N.Y. App. Div. 2014). Put differently, these tests hinge upon fundamentally different dispositive issues - the choice of law test balances a multitude of factors whereas the *Hoffman* test is concerned with one factor to the exclusion of all others.

It therefore was not "clearly inconsistent" for C&W to argue to the District Court, first, that New York had the "most significant" relationship to Rinsky's claims based on a balancing of the numerous choice of law factors, *see* A.279-80, and, later, that the jury verdict eliminated subject matter jurisdiction under the NYCHRL by determining the "impact" of Rinsky's termination was felt in Massachusetts. Judicial estoppel is therefore inapposite because there is no inconsistency between C&W's "earlier and later" positions.

Nor is Rinsky correct that C&W "succeeded" in persuading the District Court to accept its interpretation of the NYCHRL. Although Rinsky suggests in his brief that the District Court "[a]pplied the NYCHRL at C&W's request," *see* Brief of Appellee Yury Rinsky ("Rinsky Br.") at 8, just the opposite is true. C&W clearly and unequivocally objected to the jury's consideration of that statute during the following colloquy on the second day of trial:

> MR. BERLUTI: ... **C&W objects to the [NYCHRL] being applied** ... Our position on this is what was pled was state law claims. [Plaintiff] availed himself of the MCAD. He availed himself of MGL 151B. These are state law claims. There is a New York counterpart to MGL 151B, and that is the New York State Human Rights Law ... [I]t would be the state law claims that would be the analog to the Massachusetts claims that have been pled.
>
> THE COURT: Okay. That wasn't clear. So thank you.

A.369-70 (emphasis supplied). C&W then reiterated that objection in both its Rule 50(a) motion and post-trial motions. A.313 & 320-28. Accordingly, far from arguing that New York law should apply for all purposes, C&W clearly objected to application of the NYCHRL. The District Court overruled that objection and ultimately entered judgment on the NYCHRL claim. Judicial estoppel is thus inappropriate for the additional reason that

Case: 18-1302 Document: 43 Page: 13 Date Filed: 09/20/2018 Entry ID: 6199693

C&W was not successful in persuading the District Court concerning its objection that the NYCHRL did not apply.[2]

B. Rinsky Did Not Feel The Impact Of His Termination In New York City

Rinsky does not dispute that he was living and working in Massachusetts at the time his employment with C&W was terminated. Nor could he. *See* A. 413-15, 525, 996 & 999; Opening Br. at 32 (demonstrating that Rinsky had been living in Massachusetts for 45 days and had not worked in C&W's New York office for 49 days by the time of his termination). As summarized by C&W in its Opening Brief, this undisputed evidence places the impact of Rinsky's termination squarely in Massachusetts and precludes him from recovering under the NYCHRL by virtue of the *Hoffman* test. *See* Opening Br. at Section I.C. Now, on appeal, Rinsky attempts to deflect attention from this evidence by citing to *Robles v. Cox and Co., Inc.*, 841 F. Supp. 2d 615 (E.D.N.Y. 2012) for the alleged proposition that "a

[2] Nor would a rejection of judicial estoppel allow C&W to derive an "unfair advantage" or "impose an unfair detriment on [Rinsky]." *See Lively*, 899 F.3d at 33 & n.5 (noting that the element of "unfairness" is relevant, although "not a sine qua non," with respect to the application of judicial estoppel). While Rinsky protests in his brief that C&W's intention "is to foreclose any remedy for Rinsky," *see* Rinsky Br. at 13, the reality is that he could have, but did not, pursue a claim for age discrimination under federal law. The fact that New York law will not provide Rinsky with a remedy in these circumstances is no excuse for his failure to pursue all of the causes of action that were available to him.

plaintiff's residence is irrelevant to the impact analysis." *See* Rinsky Br. at 14. But this is not the law in New York.

In reality, although the portion of the *Robles* decision cited by Rinsky purports to quote from *Hoffman*, the language quoted in *Robles* regarding a plaintiff's residence does not appear anywhere in the *Hoffman* decision.[3] To the contrary, *Hoffman* itself relies on the fact that the terminated employee was not a "resident of" New York as a factor negating application of the NYCHRL. *See* 933 N.E.2d at 748. Similarly, post-*Hoffman* decisions reiterate that subject-matter jurisdiction under the NYCHRL "turns primarily on [plaintiff's] **physical location** at the time of the alleged discriminatory acts...." *See Benham v. eCommission Solutions, LLC*, 118 A.D.3d 605, 606 (N.Y. App. Div. 2014) (emphasis supplied); *see also Hardwick*, 116 A.D. at 467 ("[T]he place where the impact of the alleged discriminatory conduct is felt [ ] controls whether the Human Rights laws apply...."). Thus, far from being "irrelevant," a plaintiff's residence is treated by New York courts as a paramount factor in the evaluation of impact under the *Hoffman* test. Accordingly, Rinsky mischaracterizes New York law to the extent he asserts that this Court should disregard his Massachusetts residence as part of its *Hoffman* analysis.

---

[3] *Robles* is also unpersuasive to the extent it relies heavily on a series of decisions that pre-date *Hoffman*'s adoption of the impact test. *See Robles*, 841 F. Supp. 2d at 624-25.

Moreover, the result would be the same even if Rinsky were correct that his Massachusetts residence could be disregarded. This is because the *Robles* opinion relied upon by Rinsky acknowledges that where the "alleged discriminatory act takes place outside of New York City, the relevant location of the injury for purposes of the impact analysis is ... Plaintiff's place of employment." 841 F. Supp. 2d at 625 (dismissing NYCHRL claim where plaintiff lived in New York City but was terminated while working in Plainview, New York); *see also Wexelberg v. Project Brokers, LLC*, 13 CIV. 7904 LAK MHD, 2014 WL 2624761, at *10 (S.D.N.Y. Apr. 28, 2014) (the "impact test means that an out-of-state resident may be covered only if he worked ... in the City."). Here, Rinsky tried his case to the jury based on a theory that C&W granted him permission to become an employee of C&W of MA sometime in March or April of 2015. *See* Rinsky Br. at 1-2. He also testified that May 22, 2015 was his "last day" at C&W's New York City headquarters, and that he subsequently performed work from his Massachusetts Residence from May 28, 2015 until June 22, 2015. A.413, 415-16, 524-25. Thus, by the time of his termination on July 10, 2015, Rinsky himself identified his physical "place of employment" as Massachusetts, meaning that he felt the "impact" of the termination outside of New York City. *See* A.884-85 (closing argument from Rinsky's counsel) ("[Rinsky] was told [his request for a transfer] was

Case: 18-1302 Document: 43 Page: 16 Date Filed: 09/20/2018 Entry ID: 6199693

approved. Mr. Hamilton, Reid's manager, the only approval that Mr. Rinsky ever knew was necessary said, 'I approve.' ... So we also know from Mr. Rinsky's side of things that **he finished out his work in New York**. He packed his life up from New Jersey. **He moved it up here to Boston**.") (emphasis supplied).

This is also the reason why Rinsky's reliance on *Wexelberg* is misplaced. In *Wexelberg*, the plaintiff worked at the defendant's New York City office for the "first six weeks of his eleven-week stint," and was then "directed to work remotely from his home in New Jersey." 2014 WL 2624761, at *10. Based on those facts, the *Wexelberg* court denied defendant's motion to dismiss because, at that preliminary stage, it was concerned that defendants could evade NYCHRL liability "[b]y the simple stratagem of **directing** a targeted employee to do his work at home rather than at the New York office where he normally works, and then terminat[e] him a few days or weeks later...." *Id.*, at *11 (emphasis supplied). The facts of this case are readily distinguishable.

There is absolutely no evidence in the record that C&W **directed** Rinsky to work remotely for the New York office from his new home in Massachusetts. To the contrary, it was Rinsky who purchased his Massachusetts Residence before telling anyone at C&W of his plans, and it was Rinsky who attempted to surreptitiously transfer himself to Massachusetts. *See* Opening

Case: 18-1302 Document: 43 Page: 17 Date Filed: 09/20/2018 Entry ID: 6199693

Br. at 35 n.11. Similarly, it was Rinsky who left C&W's New York office of his own volition for the last time on May 22, 2015 and never returned. *See id.* C&W did not acquiesce to this transfer, let alone direct Rinsky to work from Massachusetts. To the contrary, C&W demanded that Rinsky return to New York because "[t]he current and long term need is to have this resourc[e] in [New York]," and because it would set a "dangerous precedent" if employees could self-engineer a transfer without advance approval. A.706-07, 983. Rinsky's assertions notwithstanding, the *Wexelberg* decision is inapposite for these reasons.

In sum, Rinsky's own trial theory demonstrates that the jury believed him to be a Massachusetts resident working with C&W's approval "at an out-of-state office" in Massachusetts at the time of his termination.[4] In these circumstances, Rinsky cannot satisfy the *Hoffman* test because he felt the impact of his termination far outside of New York City. It was reversible error for the District Court to conclude otherwise.

---

[4] It is noteworthy that, on appeal, Rinsky has completely abandoned his trial theory in a manufactured effort to establish subject-matter jurisdiction under the *Hoffman* test. Specifically, Rinsky now asserts that "at the time of his termination" he was "physically in Massachusetts as an employee of C&W in New York City." *See* Rinsky Br. at 17. Rinsky should be estopped from pressing this newly-developed theory because it represents a wholesale reversal from his argument to the jury that he was granted permission to transfer to C&W of MA and did so. *See, e.g.,* A.884-85. It is also for this reason that Rinsky's analysis of "impact" is fundamentally flawed.

## II. THE DISTRICT COURT ERRED BY FAILING TO INSTRUCT THE JURY PROPERLY REGARDING THE SUBSTANCE OF NEW YORK LAW

In its Opening Brief, C&W demonstrated that the District Court committed reversible error by confusing and conflating causation standards under the NYSHRL and NYCHRL that are not equivalent, and by failing to instruct the jury that an award of punitive damages under the NYCHRL requires clear and convincing evidence. *See* Opening Br. at Section II. Rinsky fails to engage meaningfully with these arguments in his brief, and instead mischaracterizes C&W's positions in an effort to protect the District Court judgment.

### A. The District Court Erred by Commingling and Confusing Causation Standards That Are Not "Equivalent"

As described by C&W in its Opening Brief, the District Court instructed the jury that Rinsky could prevail on his age discrimination claim under New York law if discrimination were **either** the "but for" cause **or** a "substantial factor" in C&W's termination decision. *See* Opening Br. at 37. Rinsky now defends these instructions as proper because, he claims, the District Court recited the correct NYCHRL causation standard in at least one portion of its instructions, and "provided a higher burden of proof than was necessary" in other portions by reciting the more stringent NYSHRL causation standard. *See* Rinsky Br. at 20-22. This argument misses the point of C&W's challenge to the instructions.

Case: 18-1302 Document: 43 Page: 19 Date Filed: 09/20/2018 Entry ID: 6199693

The purpose of jury instructions is not to regurgitate technically accurate fragments of conflicting causation standards in the hopes that a jury will be able to sort them out. It is to "present[] the relevant issues to the jury fairly and adequately" within the "context of the evidence." *Kennedy v. Town of Billerica*, 617 F.3d 520, 529-30 (1st Cir. 2010); *see also Sanchez-Lopez v. Fuentes-Pujols,* 375 F.3d 121, 133 (1st Cir. 2004) ("Our examination of jury instructions focuses on 'whether they adequately explained the law or whether they tended to confuse or mislead the jury on controlling issues.'") (internal citations omitted). In this regard, the District Court's instructions fell far short.

New York law is clear. Claims under the NYCHRL must be analyzed "separately and independently from any federal and state law claims." *Chauca v. Abraham ("Chauca I")*, 841 F.3d 86, 91 (2d Cir. 2016) (citing to *Mihalik v. Credit Agricole Cheuvreux N. Am.*, 715 F.3d 102, 109 (2d Cir. 2013)); *see also Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015) ("We write here to reiterate that district courts who exercise pendent jurisdiction over NYCHRL claims are required ... to analyze those claims under a different standard from that applicable to parallel federal and state law claims."). This is precisely what the District Court failed to do. Indeed, based on

Case: 18-1302 Document: 43 Page: 20 Date Filed: 09/20/2018 Entry ID: 6199693

a misguided belief that the causation standards were equivalent,[5] *see* A.796, 879, the District Court merged the NYCHRL and NYSHRL causation standards (substantial factor and but for, respectively) in its instructions without clarification or comment, *see* A.906-09, and then confused the issue further by including only the NYCHRL standard (substantial factor) in its special jury questions. *See* A.307. Taken as a whole, these instructions and special jury questions left the jury with the mistaken impression that Rinsky was pursuing a unitary New York claim for "age discrimination" that could be proven under either a "but for" or "substantial factor" causation theory. No such cause of action exists in New York.

Rinsky's appellate arguments notwithstanding, it is not enough that the District Court's instructions might have – in one place or another – accurately recited the language of New York's divergent causation standards. This is because, in totality, the District Court presented a contradictory and confusing statement of the law to the jury by disregarding the mandate of New York courts that NYCHRL and NYSHRL claims must be

[5] The applicable causation standards under the NYCHRL and NYSHRL are **not** equivalent. *See, e.g., Douglas v. Banta Homes Corp.*, No. 11 Civ. 7217(KBF), 2012 WL 4378109, at *3 (S.D.N.Y. Sept. 21, 2012) (recognizing that causation standards under NYSHRL and NYCHRL "diverge").

Case: 18-1302 Document: 43 Page: 21 Date Filed: 09/20/2018 Entry ID: 6199693

analyzed "separately and independently."[6] For this reason alone, the judgment should be vacated.[7] *See Velazco*, 778 F.3d at 411 (vacating judgment entered under NYCHRL because "the district court did not analyze [plaintiff's] NYCHRL claim separately and independently" or speak with "sufficient clarity ... as to whether the evidence was insufficient to support any causal link between age bias and plaintiff's firing, as required by the NYCHRL ... or whether the evidence was simply insufficient to support the but-for causation required by the ADEA....").

### B. The District Court Erred by Failing To Instruct The Jury That An Award Of Punitive Damages Required Clear And Convincing Evidence

Rinsky's primary defense of the District Court's instructions regarding punitive damages is that the substance of those instructions conforms to the standard recently announced by the New York Court of Appeals in *Chauca v. Abraham ("Chauca II")*, 89 N.E.3d 475 (N.Y. 2017). *See* Rinsky Br. at 22-23. Again, however, Rinsky mischaracterizes C&W's actual argument. C&W has never contended that the District Court erred in its recitation

---

[6] By focusing mechanically on the precise words utilized by the District Court in its instructions, Rinsky fails completely in his brief to address C&W's argument that the instructions as a whole confused the jury by mixing disparate causation standards. For this reason alone, Rinsky's arguments are unavailing.

[7] The judgment also should be vacated for the independent reason that it was error for the District Court to have instructed the jury on the NYCHRL causation standard at all because: (1) relief under that statute was barred by the absence of any "impact" in New York City; and (2) Rinsky failed to plead a city-based cause of action. *See* Opening Br. at 38-39.

of the substantive **standard** for awarding punitive damages (under *Chauca II* or otherwise). Rather, it has always been C&W's contention below and on appeal that the District Court erred by refusing to instruct the jury that the **burden of proof** for such an award is clear and convincing evidence. *See* Opening Br. at Section II.B.[8] Nothing in Rinsky's brief disturbs the conclusion that the District Court's failure represents reversible error.

Indeed, the sum total of Rinsky's engagement with this point is a cursory footnote arguing that *Chauca II* does not address the burden of proof for punitive damages, and that "any case law that would support this position is absent from C&W's brief." *See* Rinsky Br. at 23 n.16. These arguments are demonstrably false. The reality is that C&W cited to no less than five New York appellate decisions in its Opening Brief standing for the proposition that an award of punitive damages under New York common-law requires clear and convincing evidence. *See* Opening Br. at 42 (collecting cases). C&W also explained in its Opening Brief that, because *Chauca II* holds that punitive damages under the NYCHRL must be analyzed under the "common-law standard," the New York Court of Appeals has

[8] In addition, C&W argues on appeal that it was error for the jury to have been presented with the option to award punitive damages at all because, for the reasons described in note 7, *supra*, Rinsky was barred from pursuing relief under the NYCHRL (which is the only New York statute authorizing an award of punitive damages). *See also* Opening Br. at 41.

effectively extended the clear and convincing burden of proof established in New York's common law to the NYCHRL. *See id.* at 43 n.15. Accordingly, this Court should vacate the District Court judgment insofar as it erroneously awards punitive damages.[9]

**III. THE DISTRICT COURT ERRED BY REJECTING C&W'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE**

In his appellate brief, Rinsky does not dispute that he was unable at trial to adduce any direct evidence that age played a factor in C&W's decision to terminate his employment. Instead, Rinsky attempts to reconstruct what he believes must have been the jury's circumstantial inferences. Specifically, Rinsky suggests that the evidence supports a conclusion that C&W let Rinsky believe he had been granted a transfer to Massachusetts because it was planning at the same time to replace him with a younger employee. *See* Rinsky Br. at 27-30. The reality, however,

---

[9] Rinsky posits in his brief that any error regarding damages was harmless because "the only two laws that could have been applied at trial were the NYCHRL and Mass. Gen. Laws. 151B" and the result of the trial would have allegedly been the same under either statute. *See* Rinsky Br. at 17-18. But this argument presents a false choice. In reality, Rinsky could have, but did not, pursue a claim under federal age discrimination law. Moreover, C&W argued below that New York **state law**, rather than city law, should control pursuant to a choice of law analysis. And for the reasons described in C&W's Opening Brief at pages 38-39 and 41, and assuming this Court disagrees on C&W's impact analysis, the District Court's decision to apply the NYCHRL over C&W's objection likely had an outcome-determinative effect because there are fundamental differences between the NYSHRL and NYCHRL regarding the standard for causation and the availability of punitive damages.

is that any such conclusion is unsupported and against the weight of the evidence.

### A. C&W Was Not Planning To Replace Rinsky But Had No Choice But To React To His Efforts To Force A Transfer

Rinsky would have this Court believe that C&W tricked him into thinking he could transfer to Massachusetts because it was at the same time deploying a "six-point plan" to replace him with a younger employee. *See* Rinsky Br. at 28. The evidence simply does not support the existence of such a convoluted scheme.

According to Rinsky, the alleged proof of C&W's "six-point plan" is a May 27, 2015 email in which Rinsky's superiors "reviewed [their] options" with regard to Rinsky's by-then completed move to Boston. Rinsky Appellate Addendum ("Rinsky Add.") at 3. Yet the evidence was undisputed at trial that it was Rinsky, not C&W, who first broached the idea of a transfer and took clandestine steps to effectuate that transfer. A.398-99, 403, 407, 517. Indeed, months before C&W allegedly hatched its plan to replace him, Rinsky had **already**: (1) purchased the Massachusetts Residence on November 29, 2014, *see* A.391, 492, 955-58; (2) declared the Massachusetts Residence as his homestead on December 18, 2014, *see* A.1001-02; (3) extensively renovated the Massachusetts Residence by the end of April 2015, *see* A.392, 495-96, 512; and (4) listed his New Jersey Residence

for sale on March 27, 2015, *see* A.498-99. Rinsky took all of these steps without informing anyone at C&W of his plans, while, at the very same time, C&W re-affirmed its own commitment to Rinsky by giving him a 3% raise and a $17,138 bonus. *See* A.461-62, 498, 837-38, 959-63.

Rinsky thereafter sold his New Jersey Residence within days of communicating his first request for a transfer to Reid. *See* A.398-99, 964-72. Then, while acknowledging that the parties still needed to work out an "arrangement" to facilitate his transfer, Rinsky sent a May 17, 2015 email to inform C&W in no uncertain terms that "I **will** be moving to Boston on 5/27/15..." *See* A.975 (emphasis supplied). It was not until **10 days later** that C&W circulated the email that Rinsky now characterizes on appeal as an insidious six-point plan to replace him.[10]

The weight of this evidence supports only one conclusion – Rinsky, not C&W, was the aggressor and the schemer in this scenario. It was Rinsky who planned in secret to move to Boston, and made the conscious decision to reveal his plans to his superiors as a *fait accompli* – i.e., "I will be moving" – after taking a series of secretive steps to make Boston his permanent

[10] Although Rinsky suggests in his brief that C&W was "engineering" or "discussing" his termination prior to May 17, 2105, *see* Rinsky Br. at 3, he is distorting the emails and other evidence in the record. In reality, to the extent Reid and Hamilton had any conversations regarding Rinsky during this period, they were merely reacting to "the situation [Rinsky] has put us in with his home purchase in Boston." A.974.

home.[11] C&W, meanwhile, was caught flat-footed by the abrupt departure of a valued employee (to whom it had just granted a substantial raise and bonus) whose services were required in New York. A.983. In this context, C&W's May 27, 2015 email cannot properly be understood as a "six-point plan" to replace Rinsky. Rather, it was damage control that was designed, in the words of one of Rinsky's supervisors, to address the "situation [Rinsky] has put us in with his home purchase in Boston." A.974; *see also* Rinsky Add. at 7 (July 3, 2015 email from Cuyar stating that he needed to "stand firm" on the decision to reject relocation requests because "[t]hese individuals were all hired with full knowledge that their roles were based in New York ... I would like for our IT organization to maintain a consistent policy for all employees so that we treat everyone fairly and provide them with the same employment opportunities."). Accordingly, this Court should vacate the judgment because the inference that C&W was independently planning to terminate Rinsky is unsupported and against the weight of the evidence.

### B. C&W Had No Plausible Motivation To Replace Rinsky With A Younger Employee And Did Not Do So

Similarly misguided is Rinsky's suggestion that C&W wanted to replace him with a younger employee because it was "phasing

---

[11] In this regard, the evidence at trial established that at least two of Rinsky's superiors were unaware of his request for a transfer until after his "last day" in the New York office. *See* A.657, 699, 976.

Case: 18-1302 Document: 43 Page: 27 Date Filed: 09/20/2018 Entry ID: 6199693

out" the AS/400 computer system that had been Rinsky's expertise. *See* Rinsky Br. at 27-28. Again, the actual evidence introduced at trial belies any such conclusion.

In the first instance, there was conflicting evidence at trial as to whether C&W actually intended to discontinue the AS/400 system at the time Rinsky was terminated. *See* A.743 (testimony that C&W was still using the system as of the time of trial and had no short or long-term plans to "phase it out"); A.762 ("Q. Now, I think you had testified a little while ago that the company was not planning to phase out the AS/400 system? ... A. Correct. Well, planning not to phase out -- there's no near term plans to phase out the AS/400."); A.765 (testimony that some functions of the AS/400 were phased out, but "we still have a number of applications on the AS/400 that run today."). And, even assuming, *arguendo*, that C&W did terminate Rinsky because it intended to phase out the AS/400 system, that would have been a legitimate and nondiscriminatory reason for doing so. *See Presser v. Key Food Stores Co-Op., Inc.*, 316 Fed. Appx. 9, 11 (2d Cir. 2009) (finding "legitimate nondiscriminatory reason" for non-promotion where plaintiff "lacked equivalent computer skills"); *Gaffney v. Dep't of Information Tech. and Telecommunications*, 536 F. Supp. 2d 445, 468 (S.D.N.Y. 2008) (finding legitimate nondiscriminatory reason for non-hire where plaintiff's "camera operation skills,

knowledge, and experience, relative to the successful candidates, were outdated due to technology upgrades and the passage of time.”).

Moreover, Rinsky’s suggestion that C&W intended to terminate him in favor of a younger employee is contradicted by the evidence that, in reality, it did no such thing. Indeed, following his termination, Rinsky’s former job responsibilities were filled by existing C&W employees who were 2 and 15 years younger than him, respectively. Similarly, C&W continued to employ a person in Rinsky’s immediate AS/400 group that was only 5 years younger than him. *See* A.428, 473, 753, 840, 845. Finally, C&W has identified voluminous evidence in the record – unrebutted by Rinsky – reflecting that none of Rinsky’s superiors discussed his age in any of their conversations leading up to his termination, and that some of those superiors were, in fact, completely unaware of Rinsky’s age. *See* Opening Br. at 46. Simply put, Rinsky is incorrect to suggest that the evidentiary record could support a conclusion that C&W was motivated to replace him with a younger employee.[12] The District

---

[12] Nor would such evidence, standing alone, support a finding that C&W’s stated reason for Rinsky’s termination was pretextual. *See Strohmeyer v. Int’l Broth. of Painters and Allied Trades*, 989 F. Supp. 455, 459-60 (W.D.N.Y. 1997) (“Replacement by a younger individual ... does not, standing alone, indicate that defendant’s proffered reasons for terminating plaintiff are pretextual ... Because younger people often succeed to the jobs of older people for perfectly

Case: 18-1302 Document: 43 Page: 29 Date Filed: 09/20/2018 Entry ID: 6199693

Court erred by concluding otherwise, and this Court should vacate the judgment for this additional reason.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in C&W's opening brief, C&W respectfully requests that this Court vacate the District Court's judgment, remand this matter for further proceedings (if necessary), award C&W its costs, including attorneys' fees, in pursuing this appeal, and enter any other and further relief as this Court deems just and proper.

---

legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination.").

Case: 18-1302 Document: 43 Page: 30 Date Filed: 09/20/2018 Entry ID: 6199693

Respectfully submitted,

CUSHMAN & WAKEFIELD, INC.,

By its attorneys,

/s/ Benjamin M. McGovern
Ralph T. Lepore, III, No. 27409
Benjamin M. McGovern, No. 123536
HOLLAND & KNIGHT LLP
10 Saint James Avenue
Boston, MA 02116
(617) 523-2700

Sawnie A. McEntire, No. 1184309
Paula D. Taylor, No. 1184433
PARSONS MCENTIRE MCCLEARY PLLC
1700 Pacific Avenue, Suite 4400
Dallas, TX 75201
(214) 237-4300

Dated: September 20, 2018
Boston, Massachusetts

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,912 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a 12 point monospaced typeface using Courier New.

/s/ Benjamin M. McGovern
Benjamin M. McGovern

Case: 18-1302 Document: 43 Page: 32 Date Filed: 09/20/2018 Entry ID: 6199693

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d)(1), I hereby certify that today, September 20, 2018, I caused the foregoing to be filed electronically with the Court. As all counsel of record are registered with ECF, they shall be served by operation of the ECF system:

Michael A. Bednarz, Esq.
Robert R. Berluti, Esq.
Edward F. Whitesell, Jr., Esq.
Berluti McLaughlin & Kutchin LLP
44 School St, 9th Fl.
Boston, MA 02108-0000
*mbednarz@bmklegal.com*
*rberluti@bmklegal.com*
*ewhitesell@bmklegal.com*

John William Dennehy, Esq.
127 Main St., Ste. 1
Nashua, NH 03060-0000
*jdennehy@johnwdennehy.com*

Mark D. Szal, Esq.
Szal Law Group LLC
6 Liberty Square #330
Boston, MA 02109
*mark@szallawgroup.com*

*/s/ Benjamin M. McGovern*
Benjamin M. McGovern

# 9286284_v5